## LEWIS E. STENGEL *v.* ROYAL REALTY CORPORATION

[No. 67, October Term, 1940.]

*Decided January 3rd, 1941.*

The cause was argued before BOND, C. J., PARKE, SLOAN, MITCHELL, and JOHNSON, JJ.

*Walter H. Buck* and *Eben F. Perkins,* for the appellant.

*Parsons Newman,* for the appellee.

MITCHELL, J., delivered the opinion of the Court.

The appeal in this case is from a decree of the Circuit Court for Frederick County requiring the appellant (defendant below) to carry out his contract for the purchase of a farm located in said county, which contract the appellant had declined to perform upon the ground that the appellee could not convey to him a good and merchantable title.

It appears from an agreed statement of facts that John E. R. Wood, at the time of his death on the 6th day of June, 1918, was seized and possessed of the fee-simple interest in the real estate described in the contract; and that by his last will and testament, dated the 22nd day of October, 1915, and duly probated in the Orphans' Court of Frederick County, he appointed two of his sons, Alban M. Wood and Roger B. Wood, as his executors

with "the power to sell any or all of my estate, and to give good and sufficient title thereto to the purchaser thereof, or to hold the same and manage it for the purpose and upon the condition set forth herein as in their discretion, they, my executors, may think is for the best interest of the estate."

After providing in paragraph 3 for the distribution of the proceeds of his property among his children and grandchildren, in event his executors, in the exercise of their discretion, deemed it for the best interest of the estate to make disposition of the same, by the fourth item of said will the testator directed that "in the event that the said Roger B. Wood and the said Alban M. Wood * * * shall deem it to the best interest of the estate and the persons concerned to hold the same for a period not to exceed the lives of my executors aforesaid, and manage it for the beneficiaries hereunder, they shall pay at convenient dates in each year all incomes, rents and profits to the heirs named in the third paragraph * * * in the same ratio after deducting * * * the necessary expenses from the gross returns." The testator appears to have left as devisees under his will, besides his sons above mentioned, three other children, namely Mary E. Allen, John Wood and Earl B. Wood; it being provided in the will that the interest of the latter two children be held in trust by the said Roger B. Wood during their natural lives, respectively, and upon their death, distributed to their respective children per stirpes.

It further appears from the stipulation that at the time of the testator's death, the land involved in these proceedings was subject to the lien of a mortgage held by a building and loan association, originally in the sum of $6000, upon which a balance of $4400 was then due, which balance was paid by the executors as of August 4th, 1922; and that also at the time of his death the testator was indebted to another building and loan association upon a mortgage covering property other than that involved in these proceedings, in the sum of $3000, which mortgage was paid by the executors as of March

13th, 1922; the actual amount which was due thereon at the time of settlement not being shown.

Roger B. Wood died in April, 1926; and the agreed statement of facts shows that on the 25th of May, 1927, Alban M. Wood, the surviving executor, filed a petition in the Orphans' Court of Frederick County, alleging among other things that at the time of his death the said John E. R. Wood owed obligations aggregating $7050, which were at the time of the filing of the petition still outstanding; the same having been carried by the executors and the beneficiaries under the will. The petition further stated that at the time of the filing thereof, the above indebtedness was due by the estate to the Central Trust Company of Maryland, and that the company, seeking security for the indebtedness, had requested a mortgage on the real estate now involved. It was recited in the petition that the execution of a mortgage would not involve the estate in any indebtedness beyond that owed by the decedent in his lifetime; and upon the petition the Orphans' Court, as of May 25th, 1927, passed an order authorizing the surviving executor to execute a mortgage securing the company for the above indebtedness. On the following day the surviving executor executed the mortgage to the company; and in his individual capacity, together with his wife, as well as Mary E. Allen and her husband, and Earl B. Wood and his wife, joined in the mortgage for the purpose of indicating their approval of its execution. This mortgage in 1931 was assigned by the Central Trust Company to the Union Trust Company of Maryland; in 1934 it was assigned by the latter company to George R. Dennis, Jr., for the purpose of foreclosure; and under foreclosure proceedings the property was purchased by the said Union Trust Company, being thereafter sold and conveyed to the appellee, The Royal Realty Corporation, which corporation entered into the contract of sale forming the basis of this suit as of the 8th day of June, 1938.

By his answer to the bill, the derivation of title to the property in the appellee, as above outlined, is not dis-

208

puted by the appellant; but it is submitted that although the provisions of the will of John E. R. Wood empowered his executors to manage the property for the beneficiaries thereunder, it is uncertain and doubtful as to whether, under the proper legal construction of said will and of the powers of the executors thereunder, authority was vested in them to mortgage the property.

It will therefore be seen that the sole question involved in this appeal is whether, under the authority vested in the executors by the will, the power to mortgage the property was lodged in them. It may be stated as a general principle that powers lodged in a trustee by will, or by any other instrument creating a trust, should be strictly construed and that where the power and duties of a trustee are limited and defined by the terms of the instrument creating the trust, neither the trustee nor the court under whose jurisdiction the trust is administered can exercise any others. But it is also well settled that certain powers which are incident to the office of a trustee, although not specifically given by the instrument creating the trust, may be implied; and in the absence of an express power to encumber trust property, a trustee cannot legally subject the same to the lien of a mortgage unless, because of other duties imposed upon him, such power to mortgage may be implied. *Miller, Constr. of Wills*, sec. 183. This court has consistently held that a power of sale vested in a trustee by the instrument creating the trust does not ordinarily include the power to mortgage the property pertaining to the trust estate. *Tyson v. Latrobe*, 42 Md. 325; *Wilson v. Maryland Ins. Co.*, 60 Md. 150. It is conceded that the question as to whether the appellee in the instant case has a good and marketable title to the land contracted by it to be sold and conveyed, must be determined by the extent of the power acquired by the surviving executor, in his capacity as trustee, under the terms of the will of Mr. Wood, and the facts disclosed by the record. It must also be conceded that the order of the Orphans' Court authorizing the mortgage, clothed the surviving executor with no

additional power. *Midland Bldg. & Loan Assn. v. Hetrick,*
166 Md. 244, 170 A. 520. In *Miller, Const. of Wills,* sec.
249, it is said: "That the intention of the donor of the
power shall control, is the principle that governs in the
construction of powers; and the intention must be ascer-
tained from the language used in the instrument creating
the power, the object to be accomplished and the sur-
rounding circumstances. Powers are to be liberally and
equitably construed according to the intention of the
parties creating them, and to advance rights. What is
included in a power must depend on the peculiar circum-
stances and the intention of the parties; but a liberal con-
struction of a power does not mean that there should be
more latitude in the execution of the power than the per-
son who created it intended to give." *Pearce v. Van Lear,*
5 Md. 85; *Nevin v. Gillespie,* 56 Md. 320; *Posner v. Bay-
less,* 59 Md. 56; *Collins v. Foley,* 63 Md. 158, 52 *Am. Rep.*
505; *Worthington v. Rich,* 77 Md. 265, 26 A. 403; *Olivet
v. Whitworth,* 82 Md. 258, 33 A. 723; *Prince de Bearn v.
Winans,* 111 Md. 434, 74 A. 626; *Schmidt v. Hinkley,* 115
Md. 330, 80 A. 971.

While the record does not reveal the total estate, and
likewise the total indebtedness, of the instant testator
at the time of his death, it is definitely shown that the
property involved in this case was subject to a mortgage
in the face amount of $6000, upon which mortgage there
remained unpaid $4400, and that there was other un-
secured indebtedness which, in the absence of personal
property sufficient for its liquidation, would be an indi-
rect lien upon said property. The inference is that there
was not sufficient personal property to liquidate this in-
debtedness, as the stipulation shows that the total unpaid
indebtedness contracted by the testator pertaining to the
estate at the time of the execution of the mortgage was
the amount of the mortgage, namely, $7050. Obviously,
the testator was aware of this indebtedness at the time
of his death. As is usual, the first item of his will di-
rected his executors to sell as much of his estate, personal
or real, as might be necessary for the payment of his

just debts and funeral expenses; and as has been observed, he lodged discretion in his executors (a) to sell all of his property, or (b) to hold and manage the same as they might deem "to the best interest of the estate and the persons concerned" for the period of the lives of the executors. If, therefore, the executors in their discretion decided not to sell and dispose of the property immediately following the death of their testator, and pay the admitted indebtedness due by the estate from the proceeds thereof, but to the contrary, decided to hold and manage the same, it is evident that they were faced with the problem of either paying off the indebtedness of the estate to the then creditors, or of refinancing the same; and it is also evident that in either event the duty of paying the interest on the indebtedness in order to prevent foreclosure, or sale under a creditors' bill, was incumbent upon them.

In view of the above status of the estate, it is hardly reasonable to suppose that the testator could have contemplated the exercise by his executors of the second alternative in his will, namely, that of holding and managing the estate during the period of the trust as to two of his sons, without an implied power to refinance, by way of mortgage or otherwise, the conceded indebtedness against the estate. In other words, he must have contemplated either a sale of the property and the payment of his debts, or mortgage placed upon it by his executors to the end that they might continue to hold and manage it for the use and benefit of the beneficiaries under his will, as was done by them; and in the event they did decide to hold and manage it, the conclusion is inevitable that an implied power was vested in them for the purpose of refinancing the indebtedness to meet the situation which then confronted them. Conceding, therefore, that under the power of sale, standing alone, which was unquestionably vested in the executors of the instant testator, no power to mortgage the property can be implied, *Tyson v. Latrobe, supra; Stump v. Warfield,* 104 Md. 530, 65 A. 346, 118 *Am. St. Rep.* 434, 10 *Ann.*

*Cas.* 249, it mu$t also be conceded that under the provisions of the third paragraph of the will, when read in connection with the financial status of his estate, the power to mortgage the same, in event it became necessary so to do in the course of its management, is implied. Accordingly, the decree appealed from will be affirmed.

*Decree affirmed, with costs to the appellee.*